## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Terry-Ann Lawrence, | |
| Plaintiff, | Civil No. 3:25-cv-01022 (SVN) |
| v. | |
| Charlotte Hungerford Hospital, *et al.*, | September 15, 2025 |
| Defendants. | |

## RECOMMENDED RULING ON INITIAL REVIEW OF
## THE COMPLAINT UNDER 28 U.S.C. § 1915

This is a lawsuit filed by a *pro se* plaintiff, Terry-Ann Lawrence, against Charlotte Hungerford Hospital, Dr. Margaret Noonan, and Hartford Hospital.[1] Ms. Lawrence suffers from anxiety and post-traumatic stress disorder, or "PTSD."[2] She went to the emergency room for abdominal pain on two occasions in the summer of 2023.[3] She says, in substance, that she was mistreated and her complaints were disbelieved because of her mental health issues.[4] Claiming "permanent physical and emotional lifelong injuries," she has sued a doctor and two hospitals, alleging that they violated her rights under the Americans with Disabilities Act ("ADA") and the Equal Protection Clause of the United States Constitution.[5] She also asserts a claim for "emotional distress and anguish," and she seeks "250 million dollars . . . in monetary compensation" along with "an injunction from the courts requiring [the defendants] to stop harmful discriminatory practices."[6]

---

[1]     Complaint, Docket No. 1.
[2]     Complaint, Docket No. 1, at p. 4.
[3]     Complaint, Docket No. 1, at pp. 3-4.
[4]     Complaint, Docket No. 1, at pp. 3-5.
[5]     Complaint, Docket No. 1, at pp. 3-5.
[6]     Complaint, Docket No. 1, at pp. 5-6.

Ordinarily it costs $405.00 to start a federal civil lawsuit like this one.[7]  Plaintiffs may avoid the $405.00 fee, however, if they file an affidavit showing that they are "unable to pay[.]"[8] When a plaintiff makes this showing and obtains a fee waiver, she is said to be "proceeding *in forma pauperis*," or "IFP."[9]  In this case, Ms. Lawrence moved to proceed IFP,[10] and the presiding District Judge, the Honorable Sarala V. Nagala, granted her motion.[11]

IFP status comes with a consequence, however.  "To ensure that plaintiffs do not abuse the privilege of filing a free lawsuit, a federal law instructs district courts to review IFP complaints and dismiss them if they are frivolous or malicious, fail to state a claim, or seek relief from someone who is immune."[12]  "Because IFP plaintiffs lack 'an economic incentive to refrain from filing frivolous, malicious or repetitive lawsuits' . . . the statute instructs the Court to review their complaints and dismiss certain types of abusive or facially unmeritorious claims."[13]    Following this command, Judge Nagala referred the case to me – Magistrate Judge Thomas Farrish – to review Ms. Lawrence's complaint and make a recommendation as to whether her suit should proceed.[14]

I have carefully studied Ms. Lawrence's complaint and the relevant legal authorities. Having done so, **I recommend that Judge Nagala dismiss the complaint without prejudice.**  In

---

[7]      *See* 28 U.S.C. § 1914.
[8]      28 U.S.C. § 1915(a).
[9]      *See Rosa v. Doe*, 86 F.4th 1001, 1004 (2d Cir. 2023).
[10]     Docket Nos. 2, 11, 13.
[11]     Docket No. 14.
[12]     *Ortiz v. Tinnerello*, No. 3:22-cv-1318 (AWT) (TOF), 2023 WL 11842871, at *1 (D. Conn. Mar. 22, 2023), *report and recommendation approved and adopted*, slip op. (D. Conn. July 26, 2023) (citing 28 U.S.C. § 1915).
[13]     *Emiabata v. Bartolomeo*, No. 3:21-cv-776 (OAW) (TOF), 2022 WL 4080348, at *5 (D. Conn. Jan. 3, 2022), *report and recommendation approved and adopted*, slip op. (D. Conn. Jan. 31, 2022) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)).
[14]     Docket No. 15.

making this recommendation, I do not say that Ms. Lawrence's complaint is "malicious" or abusive; obviously, she feels that serious and harmful things happened to her in the emergency room in the summer of 2023. But each of the three claims in the complaint fails to do at least one of the two things that it needs to do to avoid dismissal: (1) show that the federal court has "subject matter jurisdiction" over the claim, and (2) "state a claim on which relief may be granted." I will explain each point in turn.

## I.    SUBJECT MATTER JURISDICTION

### A.    Governing Legal Principles

Jurisdiction is "[a] court's power to decide a case."[15] It is a term that encompasses several concepts, including "subject matter jurisdiction" and "personal jurisdiction." When a court asks itself whether it has "subject matter jurisdiction" over a case, it is asking whether it has the power to hear the type of claim that the plaintiff has brought.[16] By contrast, when a court considers whether "personal jurisdiction" exists, it asks itself whether it has power over the parties.[17]

Like all federal courts, this Court is a court of "limited" subject matter jurisdiction, meaning that it cannot hear just any case.[18] In this respect, the federal courts are unlike the Connecticut state courts. The Connecticut Superior Court is a "court of general jurisdiction," meaning that it can decide a very wide array of cases.[19] But federal courts "possess only that power authorized by Constitution and statute."[20]

---

[15]    Black's Law Dictionary (8th ed. 2004), at p. 867.
[16]    Black's Law Dictionary (8th ed. 2004), at p. 870.
[17]    Black's Law Dictionary (8th ed. 2004), at p. 870.
[18]    *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).
[19]    *State v. Butler*, 348 Conn. 51, 76 (2023) (D'Auria, J., concurring).
[20]    *Kokkonen*, 511 U.S. at 377.

3

Leaving aside some other case types that are not relevant here, Congress has authorized the federal district courts to hear and decide only three types of claims. First, federal courts may hear cases that "aris[e] under the Constitution, laws, or treaties of the United States."[21] This is known as the "federal question" form of subject matter jurisdiction, because such a case raises questions about compliance with federal law. Second, federal courts may decide cases between "citizens of different States" "where the matter in controversy exceeds the sum or value of $75,000."[22] This is known as "diversity" jurisdiction, because when the plaintiff and the defendant are citizens of different states, their citizenship is said to be "diverse" from each other. Third, Congress has authorized federal courts to hear and decide certain other claims that are "so related" to a claim properly brought under "federal question jurisdiction" or "diversity jurisdiction" "that they form part of the same case or controversy."[23] This third type of jurisdiction is called "supplemental jurisdiction" because, in a proper case, it supplements the other two types. Supplemental jurisdiction arises when a court has either federal question jurisdiction or diversity jurisdiction over at least one of the claims presented by a plaintiff, and the court chooses to exercise jurisdiction over other, closely related claims.[24] This kind of discretionary jurisdiction is meant to help parties resolve claims efficiently rather than force two or more courts to take up the same set of allegations.

Federal courts also hear and decide only those cases that the plaintiff has "standing" to bring. "Standing" refers to "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right."[25] When a court asks itself whether the plaintiff "has standing," it is asking whether

---

[21]    28 U.S.C. § 1331.
[22]    28 U.S.C. § 1332.
[23]    28 U.S.C. § 1367.
[24]    *See* 28 U.S.C. § 1367(a).
[25]    Black's Law Dictionary (8th ed. 2004), at p. 1442.

the plaintiff "is the right person to bring this claim."[26]  In a car accident case, for example, the person who was physically injured by the collision typically has "standing" to sue the at-fault driver, but a bystander who only saw the collision ordinarily does not.  Another way of putting this is to say that the plaintiff must have a "personal stake" in the claims that she has brought against the defendant.[27]

A plaintiff's case begins with her complaint, and that complaint must contain "a short and plain statement of the grounds for the court's jurisdiction."[28]  If the complaint fails to show that the court has jurisdiction over the case – in other words, if it fails to show that the case is one of the three types that a federal court is empowered to hear – dismissal is required.[29]  Dismissal is also appropriate if the complaint lacks enough facts to "affirmatively and plausibly suggest that the plaintiff has standing to sue."[30]  Moreover, when subject matter jurisdiction or standing is lacking, the complaint must be dismissed even if it was drafted by a *pro se* plaintiff.[31]   Put differently, although courts do not review a *pro se* complaint with the same level of scrutiny as one drafted by an attorney,  a court simply lacks authority to hear a case that is outside its jurisdiction – regardless of who drafted the complaint.[32]

---

[26]      *Kearns v. Cuomo*, 415 F. Supp. 3d 319, 322 (W.D.N.Y. 2019) (citation omitted).

[27]      *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

[28]      Fed. R. Civ. P. 8(a)(1).

[29]      Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also Yong Qin Luo v. Mikel*, 625 F.3d 772, 775 (2d Cir. 2010) (per curiam) ("Where jurisdiction is lacking . . . dismissal is mandatory.") (internal quotation marks omitted).

[30]      *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (citation and brackets omitted).

[31]      *See, e.g.*, *Rene v. Citibank N.A.*, 32 F. Supp. 2d 539, 541 (E.D.N.Y. 1999); *cf. also Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (placing the burden of proving subject matter jurisdiction on the *pro se* plaintiff).

[32]       *See Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (concluding that *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") (internal quotation marks omitted).

If an IFP plaintiff's complaint shows that subject matter jurisdiction exists, however, that does not necessarily mean that her case can proceed. Jurisdiction is just one of several inquiries that need to be satisfied before her case can move forward. As noted above, even in a case where jurisdiction is clearly established, the Court must review an IFP plaintiff's complaint to ensure that, among other things, it "state[s] a claim on which relief may be granted."[33]

But courts analyze subject matter jurisdiction first, because if it does not exist, there is just no way they can consider the case – however meritorious it may otherwise be. The Supreme Court has explained that "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived."[34] Applying this principle, district courts routinely hold that when subject matter jurisdiction and failure to state a claim are both in question, subject matter jurisdiction must be analyzed first.[35]

## B.    Jurisdictional Analysis of Ms. Lawrence's Complaint

In this case, Ms. Lawrence asserts three claims – a claim under the ADA, a claim that her equal protection rights were violated, and a state-law claim for emotional distress.[36] In this section of my recommended ruling, I will examine whether the Court has jurisdiction over each of these claims – in other words, I will examine whether Ms. Lawrence has gotten over the first hurdle. In Section II, I will consider whether she has stated a claim upon which relief may be granted – that is, whether she has gotten over the second hurdle.

---

[33]    28 U.S.C. § 1915(e)(2)(B)(ii).
[34]    *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).
[35]    *E.g., Secs. & Exch. Comm'n v. Rorech*, 673 F. Supp. 2d 217, 220-21 (S.D.N.Y. 2009).
[36]    Complaint, Docket No. 1, at pp. 3-6.

### 1. *Jurisdiction as to the Equal Protection Claim*

I will address Ms. Lawrence's claims in a different order than she raised them in her complaint, because the jurisdictional analysis on her second claim is easy. A claim that a defendant violated a plaintiff's right to equal protection is a claim that arises under the Fourteenth Amendment to the United States Constitution, and in a proper case it is made actionable by a federal statute, 42 U.S.C. § 1983. It therefore "aris[es] under the Constitution, laws, or treaties of the United States," and this Court has the power to hear it under its "federal question jurisdiction." As I will explain in Section II, Ms. Lawrence's equal protection claim does not get over the second hurdle, and it therefore should not move forward. But I am required to analyze jurisdiction first, and the equal protection claim does get over that first hurdle.

### 2. *Jurisdiction as to the ADA Claim*

The question of jurisdiction is more complex with respect to Ms. Lawrence's first claim – her claim of disability discrimination under the ADA. To explain why this is so, some background information about the ADA will be helpful.

The ADA protects individuals with disabilities from discrimination in several different areas of life. The statute is organized in "titles," with each title addressing discrimination in a different area. "Title I" addresses disability discrimination by "an employer, employment agency, labor organization, or joint labor-management committee."[37] "Title II" concerns disability discrimination by public entities with respect to public services or programs.[38] "Title III" concerns disability discrimination by a "private entity engaged in the provision of public accommodations,

---

[37]     42 U.S.C. § 12111(2).
[38]     *See Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).

such as an inn, hotel, or private school[.]"[39]  Finally, "Title IV" prohibits discrimination based on disability in telecommunications.[40]

In this case, Ms. Lawrence does not allege that she was employed by any of the defendants, and her claim therefore does not arise under Title I.  She also does not allege that any defendant is a public, governmental body, and her claim therefore does not implicate Title II.  Nor does she allege that any defendant is a telecommunications provider, and her claim accordingly does not arise under Title IV.  Rather, she alleges that the defendants violated Title III, and Title III only.[41]

Importantly, Title III does not permit plaintiffs to recover money damages.[42]  Instead, "[a] private individual may only obtain injunctive relief for violations of a right granted under Title III."[43]  In other words, while a court can (for example) order a business to build a wheelchair ramp or modify policies to comply with the ADA's requirements in a Title III case brought by a private plaintiff, it cannot order the business to pay money to that plaintiff.[44]

This principle affects the questions of jurisdiction and standing.  To have standing, a plaintiff must show (1) that she has been injured (*i.e.*, that she has suffered "an injury in fact"); (2) that her injury was caused by the defendant's conduct; and (3) that there is something that the court can do to address it.[45]  In an ADA Title III case, where forward-looking injunctive relief is the

---

[39]    *Morales v. New York*, 22 F. Supp. 3d 256, 266 (S.D.N.Y. 2014) (citing 42 U.S.C. §§ 12181(7), 12182).

[40]    *See* 47 U.S.C. § 225.

[41]    Complaint, Docket No. 1, at p. 3 (citing 42 U.S.C. § 12182).

[42]    *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 86 (2d Cir. 2004) ("Monetary relief . . . is not available to private individuals under Title III of the ADA.").

[43]    *Powell*, 364 F.3d at 86 (citing *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968)).

[44]    *See* 42 U.S.C. § 12188(a)(2).

[45]    "[T]o have Article III standing, [a plaintiff] must establish three things: (1) that she has an injury in fact; (2) that there is a causal connection between her injury and the conduct complained of; and (3) that her injury will be redressed by a favorable judicial decision." *Costin v. Glens Falls*

only relief available, "a plaintiff has suffered an injury in fact when: (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' businesses to plaintiff's home, that plaintiff intended to return to the subject location."[46] A plaintiff who is pursuing an injunction under Title III "may not rely solely on past injury, but also must establish that 'she is likely to be harmed again in the future in a similar way.'"[47] Accordingly, courts have concluded that a plaintiff must plead that a return to the subject location is "likely" and not just "possible."[48] In other words, a plaintiff has standing to seek an injunction under Title III only when the injury claimed in the complaint is likely to occur again.

In this case, Ms. Lawrence's complaint contains no facts demonstrating that she intends to return to Charlotte Hungerford Hospital, Hartford Hospital, or to the practice of Dr. Noonan for treatment. Moreover, there are no facts put forward in the complaint that could be construed by the Court as a claim that the alleged discrimination will occur again. While it is possible that Ms.

---

*Hosp.*, 103 F.4th 946, 952 (2d Cir. 2024) (quoting *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022)) (brackets omitted).

[46] *Costin*, 103 F.4th at 492 (quoting *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022)) (brackets omitted).

[47] *Calcano*, 36 F.4th at 74 (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016)).

[48] *See, e.g., Ortiz v. Westchester Med. Ctr. Health Care Corp.*, No. 7:15-cv-05432 (NSR), 2016 WL 6901314, at *7 (S.D.N.Y. Nov. 18, 2016) (concluding that the plaintiffs would need to allege that a referral or emergency transport to the defendant hospital was "actually likely, not merely possible" in order to establish a real and immediate threat of future harm); *Constance v. State Univ. of New York Health Sci. Ctr. at Syracuse*, 166 F. Supp. 2d 663, 667 (N.D.N.Y. 2001) (concluding that the plaintiffs had "at most shown a mere possibly of a return visit to Defendant Hospital" and not a "likelihood" because it was speculative that the plaintiffs would suffer another medical emergency and be transported there for treatment); *see also Nastu v. Stamford Health Integrated Pracs.*, No. 3:16-cv-00292 (JCH), 2016 WL 2858774, at *4 (D. Conn. May 16, 2016) (stating that it was "of great[] concern to the court" that the complaint was "devoid of any assertion" that the plaintiff "even desire[d] to utilize the [defendant] physicians, let alone an intent to seek their services").

Lawrence could be taken to Charlotte Hungerford Hospital again for emergency treatment – the hospital is in the same town in which she lives – courts have concluded that such a possibility is not sufficient to establish standing.  In the case of *Schroedel v. New York University Medical Center*, for example, an emergency room failed to provide a deaf woman with a sign language interpreter.[49]  The woman claimed that this constituted disability discrimination, and her complaint alleged that "(1) she [would] experience a medical condition in the future that [would] require emergency room assistance; (2) she [would] decide to utilize the services of the [defendant hospital] for this condition; and (3) the [defendant hospital] [would] discriminate against her" again.[50]  The court concluded that such "inferences" amounted to "mere speculation" and could not support standing.[51]

Here, the complaint does not even contain the sort of speculation that failed to support standing in *Schroedel*, let alone facts demonstrating that a return to the defendant hospitals or the defendant physician for treatment is likely.  Consequently, I recommend that Judge Nagala dismiss Ms. Lawrence's ADA Title III claim for lack of subject matter jurisdiction.

### 3.    Jurisdiction as to the Emotional Distress Claim

Ms. Lawrence's third claim is a claim for "emotional distress and anguish."[52]  She alleges that the defendants wrongfully delayed in referring her to surgery, with the result that her "fallopian tube and ovar[y] were removed."[53]  She also says that the surgical delay "resulted in L5, S1 spinal

---

[49]    *Schroedel v. New York Univ. Med. Ctr.*, 885 F. Supp. 594, 596 (S.D.N.Y. 1995).
[50]    *Schroedel,* 885 F. Supp. at 599 (S.D.N.Y. 1995).
[51]    *Schroedel*, 885 F. Supp. at  599 (citing *Northwest Airlines, Inc. v. Federal Aviation Admin.*, 795 F.2d 195, 201 (D.C. Cir. 1986)) ("The injury requirement will not be satisfied simply because a chain of events can be hypothesized in which the action challenged eventually leads to actual injury.").
[52]    Complaint, Docket No. 1, at p. 5.
[53]    Complaint, Docket No. 1, at p. 5.

stenosis, L5 S1 desiccation and central disc protrusion," and a "C6, 67 disc protrusion."[54]  She says that she is "in pain every day," and that she has been "left with permanent physical and emotional lifelong injuries."[55]

This claim does not fall into one of the three categories of cases that this Court has jurisdiction to consider.  An emotional distress claim arises under state law, not federal law, and therefore the Court does not have federal question jurisdiction over it.[56]  Nor does the Court have diversity jurisdiction, because Ms. Lawrence and the defendants are evidently all citizens of Connecticut.[57]  And because the ADA claim should be dismissed for lack of jurisdiction and the equal protection claim should be dismissed for failure to state a claim, the emotional distress claim should not qualify for supplemental jurisdiction, because federal courts do not typically hear state law claims under supplemental jurisdiction if all so-called "original jurisdiction" claims have been dismissed.[58]

## II.    FAILURE TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED

### A.    Governing Legal Principles

In this section of my recommended ruling, I will consider whether Ms. Lawrence's complaint "fails to state a claim on which relief may be granted."[59]  The Supreme Court has

---

[54]     Complaint, Docket No. 1, at p. 5.

[55]     Complaint, Docket No. 1, at p. 5.

[56]     *Hyman v. Mashantucket Pequot Indian Tribe of Conn.*, 607 F. Supp. 3d 212, 218 (D. Conn. 2022) (stating that the plaintiff's emotional distress claim arose "under state law," and did "not invoke any federal law").

[57]     *See* Complaint, Docket No. 1, at p. 1.

[58]     *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it had original jurisdiction[.]"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1966) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").

[59]     28 U.S.C. § 1915(e)(2)(B).

explained that a complaint "fails to state a claim" when it lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[60]  And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[61]  When a district court reviews for "failure to state a claim," it asks itself whether the plaintiff's complaint alleges enough "facts that, if [s]he were to prove them, would add up to a legally meritorious claim."[62]

These and other pleading rules are not applied as strictly against *pro se* plaintiffs like Ms. Lawrence as they are against licensed attorneys.  "Since most *pro se* plaintiffs lack familiarity with the formalities of pleading requirements," courts must "construe *pro se* complaints liberally, applying a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel."[63]  In other words, courts interpret *pro se* complaints "to raise the strongest arguments that they suggest."[64]  Still, even a *pro se* plaintiff must plead a plausible claim.[65]

## B.    Analysis of Ms. Lawrence's Complaint

### 1.    *ADA claim*

In Section I, I concluded that the Court lacks jurisdiction over Ms. Lawrence's ADA claim. When a court reaches that conclusion, ordinarily the analysis stops there.  In this case, however, I

---

[60]    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

[61]    *Ashcroft*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[62]    *Ortiz*, 2023 WL 11842871, at *1.

[63]    *Lerman v. Bd. of Elections*, 232 F.3d 135, 139–40 (2d Cir. 2000).

[64]    *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotation marks omitted).

[65]    *See Vega v. Univ. of Conn. Med. Ctr.*, No. 3:11-cv-01864 (AVC), 2012 WL 1825381, at *1 (D. Conn. May 16, 2012) ("Although courts still have an obligation to liberally construe a *pro se* complaint, the complaint must include sufficient factual allegations to meet the standard of facial plausibility." (internal citation omitted)).

will address whether Ms. Lawrence's complaint states a valid ADA claim, just in case Judge Nagala disagrees with my jurisdictional analysis.

To state a claim under Title III of the ADA, a plaintiff must allege "(1) that she is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide."[66] The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."[67]

When a plaintiff sues a hospital or other medical provider under Title III, she states a valid claim if she "alleges that the defendants made treatment decisions based on factors that are unrelated to, and thus improper to consideration of the inquiry in question."[68] Conversely, if a doctor "administers a medical treatment to a patient (or withholds it) because the doctor's medical training leads her to conclude that the treatment is medically appropriate (or inappropriate)," federal discrimination law does not review the doctor's conduct.[69] This is true "[e]ven if [the] decision-making was faulty or constituted malpractice."[70]

Read in the light most favorable to Ms. Lawrence, the complaint attempts to allege that she was denied treatment after the defendants dismissed her concerns because of her prior PTSD

---

[66]     *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008) (per curiam) (citing 42 U.S.C. § 12182(a)).

[67]     42 U.S.C. § 12102(1).

[68]     *Costin*, 103 F.4th at 954 (internal quotation marks omitted).

[69]     *Costin*, 103 F.4th at 954 (citing *McGugan v. Aldana-Bernier*, 752 F.3d 224, 231 (2d Cir. 2014)).

[70]     *Costin*, 103 F.4th at 954; *see also McGugan*, 752 F.3d at 232 (concluding that a doctor's treatment decision "is not discrimination in violation of the statute, even if the doctor's medical analysis is flawed," and that "[s]uch a decision may be malpractice, but it is not discrimination").

---

diagnosis. But the complaint also says that Dr. Noonan told Ms. Lawrence during the same emergency room visit that her pain was caused by a cystocele and that "the problem [would] be resolved in [two] days with [her] scheduled surgery."[71] It then says that Ms. Lawrence had that surgery.[72] Thus, Ms. Lawrence appears to be contending that she was denied the medical care that she wanted (*i.e.*, an ultrasound and a "full workup") and not that she was denied all medical care. In other words, she is saying that the medical care was "faulty or constituted malpractice," which does not support a claim under the ADA.[73]

To state a claim, Ms. Lawrence needed to plead facts that demonstrate that the defendants made treatment decisions based on her mental health issues instead of their medical training. However, the complaint contains only one conclusory statement that she was "denied service based on [her] prior diagnosis of PTSD,"[74] and conclusory allegations are insufficient.[75] Accordingly, even if Ms. Lawrence had demonstrated that she had standing and that that Court had jurisdiction over her ADA claim, it should be dismissed for failure to state a claim.

---

[71]     Complaint, Docket No. 1, at pp. 4-5.

[72]     Complaint, Docket No. 1, at 5.

[73]     *Costin*, 103 F.4th at 954; *see also Silva v. Baptist S. Fla., Inc.*, 856 F.3d 824, 834 (11th Cir. 2017) ("The ADA and [Rehabilitation Act] focus not on quality of medical care or the ultimate treatment outcomes, but on the equal opportunity to *participate* in obtaining and utilizing services."); *Doe v. Univ. of Maryland Med. Sys. Corp.*, No. 1:23-cv-03318 (JRR), 2024 WL 4236671, at *13 (D. Md. Sept. 18, 2024) (stating that claims of inadequate health care do not constitute a violation of the ADA).

[74]     Complaint, Docket No. 1, at p. 5. A statement is "conclusory" when it "express[es] a factual inference without stating the underlying facts on which the inference is based." Black's Law Dictionary (8th ed. 2004) at p. 308. The statement in Ms. Lawrence's complaint is "conclusory" because it does not provide a factual basis – observations, documents, statements, etc. – that could support the conclusion that the defendant denied service to Ms. Lawrence on the basis of her previous diagnosis.

[75]     *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2.     *Equal protection claim*

Ms. Lawrence's second claim is for violation of her right to equal protection under the Fourteenth Amendment to the United States Constitution.[76]  Like most constitutional provisions, the Fourteenth Amendment applies only to actions by governments and their agents.[77]  "[P]rivate conduct generally is not regulated by the Constitution."[78]  Reflecting this principle, the chief federal statute that lets people sue when their constitutional rights are violated – 42 U.S.C. § 1983 – applies only if the defendant was "acting under color of state law."[79]  This typically means a government employee,[80] but it can also mean someone who was acting on behalf of or in partnership with the government.[81]  Genuinely private conduct, however, is beyond the reach of a § 1983 claim[82] - even if it is discriminatory.   Again, the United States Constitution generally regulates the government's actions, not the conduct of private parties.[83]

 In this case, Ms. Lawrence is asserting claims against Charlotte Hungerford Hospital, Hartford Hospital, and Dr. Margaret Noonan, all private parties.[84]  She does not allege any governmental involvement, nor does she allege that the defendants' private conduct can be fairly treated as state government action.  In other words, Ms. Lawrence does not allege conduct that can be regulated by the Constitution.  For that reason, the complaint fails to state a § 1983 claim.  I therefore recommend that Judge Nagala dismiss Ms. Lawrence's equal protection claim.

---

[76]     Complaint, Docket No. 1, at 5.
[77]     *Martin v. City of New York*, No. 07-Civ.-7384 (DC), 2008 WL 1826483, at *2 (S.D.N.Y. Apr. 23, 2008) (citing *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 619 (1991)).
[78]     *Martin*, 2008 WL 1826483, at *2.
[79]     *West v. Atkins*, 487 U.S. 42, 48 (1988).
[80]     *West,* 487 U.S. at 49.
[81]     *See Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012).
[82]     *See American Mfrs. Mut. Ins. Co. v. Sulliva*n, 526 U.S. 40, 50 (1999).
[83]     *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 941 F.2d 1292, 1295 (2d Cir. 1991).
[84]     Complaint, Docket No. 1, at p. 1.

### 3.    *Emotional distress claim*

Ms. Lawrence's third claim is for "emotional distress and anguish," which the Court interprets as a state-law claim for either intentional infliction of emotional distress or negligent infliction of emotional distress.[85]  To state a plausible claim for intentional infliction of emotional distress, a plaintiff must plead facts that, if she were to prove them, would show that the defendant "intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct;" "that the conduct was extreme and outrageous;" "that the defendant's conduct was the cause of [her] distress;" and "that the emotional distress . . . was severe."[86]  To state a plausible claim for negligent infliction of emotional distress, the complaint must allege facts that would show that "the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress;" the "distress was foreseeable;" the distress "was severe enough that it might result in illness or bodily harm;" and "the defendant's conduct was the cause of [her] distress."[87]  In this case, once the plaintiff's conclusory allegations are disregarded – as they must be, for purposes of determining whether she has stated a claim upon which relief can be granted[88] – the complaint describes a disagreement over the propriety of her medical treatment. The foreseeability element of both the intentional and negligent forms of emotional distress would therefore seem to be lacking, because the plaintiff's medical providers could not plausibly have foreseen that severe emotional distress would result from such a dispute.  Thus, even if the Court were to exercise jurisdiction over Ms. Lawrence's third claim, I would recommend that it be dismissed for failure to state a claim upon which relief can be granted.

---

[85]    Complaint, Docket No. 1, at 5.
[86]    *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210 (2000).
[87]    *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003).
[88]    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.    CONCLUSION

In sum, I recommend that Judge Nagala dismiss all of Ms. Lawrence's claims without prejudice to repleading.  If my recommendation is accepted, this would mean that Ms. Lawrence could file an amended complaint attempting to cure the defects discussed in this recommended ruling – in other words, an amended complaint that properly invokes the court's jurisdiction, and that contains enough factual material to permit the reasonable inference that defendants are liable to her for the misconduct that she alleges.  There may be no cure for the defects in her complaint, but plaintiffs are usually permitted at least one try.[89]

This is a recommended ruling by a Magistrate Judge.[90]  **If Ms. Lawrence wishes to object to my recommendation, she must file that objection with the Clerk of the Court by October 6, , 2025.[91]**  If she fails to file a timely objection, her failure "operates as a waiver of any further judicial review[.]"[92]  In particular, failure to file a timely objection operates as a waiver of the right to seek appellate review in the Court of Appeals.[93]

_/s/ Thomas O. Farrish_
Hon. Thomas O. Farrish
United States Magistrate Judge

---

[89]    _See, e.g., Cuoco v. Moritsugu_, 222 F.3d 99, 112 (2d Cir. 2000) (observing that _pro se_ plaintiffs are often permitted "leave to amend at least once").

[90]    Fed. R. Civ. P. 72(b)(1); D. Conn. L. Civ. R. 72.1(C).

[91]    _See_ Fed. R. Civ. P. 72(b)(2) (stating that objections to magistrate judge recommendations shall be filed within fourteen days); D. Conn. L. Civ. R. 72.2(a) (allowing five additional days for persons who, like Ms. Lawrence, will receive the recommendation from the Clerk of the Court via mail).

[92]    _Small v. Sec'y of Health & Human Servs._, 892 F.2d 15, 16 (2d Cir. 1989).

[93]    _Small,_ 892 F.2d at 16; _see also_ 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6; _see also Impala v. U.S. Dep't of Justice_, 670 F. App'x 32 (2d Cir. 2016) (summary order).