UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Terry-Ann Lawrence, | |
| Plaintiff, | Civil No. 3:25-cv-01022 (SVN) |
| v. | |
| Charlotte Hungerford Hospital, *et al.*, | January 13, 2026 |
| Defendants. | |

## RECOMMENDED RULING ON INITIAL REVIEW OF THE AMENDED COMPLAINT UNDER 28 U.S.C. § 1915

This is a lawsuit filed by a *pro se* plaintiff, Terry-Ann Lawrence, against Charlotte Hungerford Hospital, Hartford Hospital and Dr. Margaret Noonan.[1]  Ms. Lawrence suffers from anxiety and post-traumatic stress disorder, or "PTSD."[2]  She went to the emergency room for a vaginal complaint in the summer of 2023.[3]  She says, in substance, that she was mistreated and her complaint was disbelieved because of her mental health issues.[4]  Claiming "permanent physical and emotional lifelong injuries," she sued Dr. Noonan and the two hospitals in a complaint dated June 24, 2025.[5]  In that complaint, she alleged that the defendants violated her rights under Title III of the Americans With Disabilities Act ("ADA") and the Equal Protection Clause of the United States Constitution.  She also moved for leave to proceed *in forma pauperis*, or "IFP"—in other words, she asked for permission to begin her lawsuit without paying the $405.00 filing fee.[6]

---

[1]   Amended Complaint, Docket No. 19.
[2]   Amended Complaint, Docket No. 19, at p. 4.
[3]   Amended Complaint, Docket No. 19, at p. 4.
[4]   Amended Complaint, Docket No. 19, at p. 4.
[5]   Original Complaint, Docket No. 1, at p. 5.
[6]   Motion for Leave to Proceed *In Forma Pauperis*, Docket No. 2.

As the Court previously explained to Ms. Lawrence, IFP status comes with a consequence. "To ensure that plaintiffs do not abuse the privilege of filing a free lawsuit, a federal law instructs district courts to review IFP complaints and dismiss them if they are frivolous or malicious, fail to state a claim, or seek relief from someone who is immune."[7]  "Because IFP plaintiffs lack 'an economic incentive to refrain from filing frivolous, malicious or repetitive lawsuits' . . . the statute instructs the Court to review their complaints and dismiss certain types of abusive or facially unmeritorious claims."[8] Following this law, District Judge Sarala Nagala referred Ms. Lawrence's original complaint to me—Magistrate Judge Thomas Farrish—to review it and make a recommendation as to whether the suit should proceed.[9]

After carefully studying Ms. Lawrence's claims, I issued a seventeen-page recommended ruling recommending that Judge Nagala dismiss the complaint without prejudice.[10]  With respect to the ADA claim, I explained (among other things) that private plaintiffs cannot recover money damages under Title III, and that Ms. Lawrence did not have "standing" to pursue an injunction because she did not plausibly allege "that a return to the defendant hospitals or the defendant physician for treatment is likely."[11]  With respect to the Equal Protection claim, I explained that "the Fourteenth Amendment applies only to actions by governments and their agents," and that Ms. Lawrence had failed to state a claim against the three defendants because she did "not allege any governmental involvement, nor [did] she allege that the defendants' private conduct can be

---

[7]     *Ortiz v. Tinnerello*, No. 3:22-cv-1318 (AWT) (TOF), 2023 WL 11842871, at *1 (D. Conn. Mar. 22, 2023), *report and recommendation approved and adopted*, slip op. (D. Conn. July 26, 2023) (citing 28 U.S.C. § 1915).

[8]     *Emiabata v. Bartolomeo*, No. 3:21-cv-776 (OAW) (TOF), 2022 WL 4080348, at *5 (D. Conn. Jan. 3, 2022), *report and recommendation approved and adopted*, slip op. (D. Conn. Jan. 31, 2022) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)).

[9]     Order of Referral, Docket No. 15.

[10]    Recommended Ruling, Docket No. 18.

[11]    Recommended Ruling, Docket No. 18, at p. 10.

fairly treated as state government action."[12]  I also explained why a common law claim for "emotional distress and anguish" was subject to dismissal for lack of jurisdiction and failure to state a claim.[13]  I closed by informing Ms. Lawrence of her right to object to my recommendation.[14]

Rather than object, Ms. Lawrence filed an amended complaint in which she attempted to address the issues I identified in my recommendation in two principal ways.[15]  First, she attempts to plead a claim under the Rehabilitation Act,[16] a disability discrimination statute under which money damages can sometimes be available to private plaintiffs.[17]  Second, she adds additional detail to her ADA Title III claim, including details about subsequent treatments at the defendant hospitals and the likelihood of her returning to those hospitals in the future.[18]  The amended complaint also dropped the original complaint's Equal Protection and emotional distress claims.

Thus, the question now before me is whether the Rehabilitation Act claim and the amended ADA Title III claim deserve to move forward.  I previously explained the initial review process to Ms. Lawrence,[19] and there is no need to repeat that discussion here at the same length.  Briefly, the Court must first analyze whether it has jurisdiction over each claim, including whether the plaintiff has standing to make it.[20]  If the Court has jurisdiction, it then asks itself whether the plaintiff's claim is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief."[21]  In performing

---

[12]   Recommended Ruling, Docket No. 18, at p. 15.
[13]   Recommended Ruling, Docket No. 18, at pp. 10-11, 16.
[14]   Recommended Ruling, Docket No. 18, at p. 17.
[15]   Amended Complaint, Docket No. 19.
[16]   Amended Complaint, Docket No. 19, at p. 4.
[17]   *Loeffler v. Staten Isl. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009).
[18]   Amended Complaint, Docket No. 19, at 12-13.
[19]   Recommended Ruling, Docket No. 18, at pp. 3-6, 11-12.
[20]   Recommended Ruling, Docket No. 18, at pp. 3-5.
[21]   28 U.S.C. § 1915(e)(2)(B).

these analyses, the Court "construe[s] *pro se* complaints liberally, applying a more flexible standard to evaluate their sufficiency than [they] would when reviewing a complaint submitted by counsel."[22]  A federal court cannot, however, fill the gaps in a plaintiff's complaint by imagining facts that she has not pled.[23]  Even a *pro se* plaintiff must provide enough factual allegations to add up to a meritorious legal claim, assuming she can prove them at a later stage of the case.[24]

### A.     The Rehabilitation Act Claim

I begin my analysis of Ms. Lawrence's Rehabilitation Act claim by considering whether the Court has jurisdiction over it.  The Rehabilitation Act is a federal law, codified at 29 U.S.C. §§ 701 *et seq.*, and accordingly Ms. Lawrence's claim "aris[es] under the Constitution, laws, or treaties of the United States," triggering "federal question jurisdiction" under 28 U.S.C. §1331.[25]  And because she claims to be a "person aggrieved" by "disability-based discrimination," she has standing to bring the claim under Article III of the Constitution.[26]  Moreover, unlike under ADA Title III, a Rehabilitation Act plaintiff can win money damages under the right circumstances.[27]  Because the Rehabilitation Act permits backward-looking monetary relief in a proper case, Ms. Lawrence's standing to bring a claim under that statute does not depend on the likelihood of her returning to the defendants' hospitals and being discriminated against, as it did with her claim for injunctive relief under ADA Title III.[28]  Her claim therefore passes the first step of the analysis.

---

[22]     *Lerman v. Bd. of Elections*, 232 F.3d 135, 139-40 (2d Cir. 2000).
[23]     *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).
[24]     *E.g., Vega v. Univ. of Conn. Med. Ctr.*, No. 3:11-cv-1864 (AVC), 2012 WL 1825381, at *1 (D. Conn. May 16, 2012) ("Although courts still have an obligation to liberally construe a *pro se* complaint, the complaint must include sufficient factual allegations to meet the standard of facial plausibility.") (citation omitted).
[25]     28 U.S.C. § 1331.
[26]     *Fulton v. Goord*, 591 F.3d 37, 42 (2d Cir. 2009).
[27]     *Loeffler v. Staten Isl. Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009).
[28]     Recommended Ruling, Docket No. 18, at pp. 7-10.

The claim fails at the second step, however, because Ms. Lawrence has not pled enough facts to add up to a legally meritorious Rehabilitation Act claim. To put it in the terms that the *in forma pauperis* statute uses, she has "fail[ed] to state a claim on which relief may be granted."[29] To explain why this is so, I will begin with some basics about the Rehabilitation Act.

The Rehabilitation Act "provides, in relevant part, that '[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.'"[30] Section 504 of the Act "offer[s] essentially the same protections for people with disabilities" as Title II of the ADA.[31] One of the few differences between the Rehabilitation Act and the ADA is that a Rehabilitation Act plaintiff may sometimes recover money damages, as noted above—but "only upon a showing of an *intentional* violation."[32] Another difference is that, whereas the ADA forbids discrimination "by reason of" disability, the Rehabilitation Act forbids it "*solely* by reason of" disability.[33] And whereas ADA Title III applies to defendants who "own, lease, or operate a place of public accommodation,"[34] the Rehabilitation Act "limits its coverage to the 'program or activity' that 'receiv[es]' federal financial assistance."[35]

Ms. Lawrence's amended complaint fails to state a plausible claim under the Rehabilitation Act for several reasons, two of which could perhaps be fixed with another pleading amendment.

---

[29]   28 U.S.C. § 1915(e)(2)(B)(ii).
[30]   *Kloth-Zanard v. Block, Inc.*, No. 3:24-cv-965 (SVN), 2025 WL 2776789, at *5 (D. Conn. Sept. 26, 2025) (quoting 29 U.S.C. § 794).
[31]   *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 113 (2d Cir. 2001).
[32]   *Loeffler v. Staten Isl. Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009) (emphasis in original).
[33]   *Compare* 42 U.S.C. §12132 *with* 29 U.S.C. § 794(a).
[34]   *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008) (per curiam) (citing 42 U.S.C. § 12182(a)).
[35]   *United States Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 604 (1986) (citing 29 U.S.C. §794).

First, while Ms. Lawrence alleges that she has PTSD, she does not plausibly allege that she is disabled by it. The Rehabilitation Act borrows the ADA's definition of "individual with a disability,"[36] and under that definition, the plaintiff's claimed physical or mental impairment must be severe enough to "substantially limit[] one or more major life activities." While Ms. Lawrence conclusorily alleges that she is "an individual with a disability," she pleads no facts that would permit the plausible inference that her PTSD substantially limits her in any major life activity.[37] To be sure, a plaintiff can also qualify as an "individual with a disability" if she is "regarded has having such an impairment,"[38] and Ms. Lawrence does allege that Dr. Noonan knew about her condition;[39] but to qualify under this prong, her PTSD must have an "actual or expected duration" of at least six months,[40] and her complaint contains no facts that would support this conclusion.[41] Second, while the Court does not doubt that the two hospital defendants likely receive some federal funds, Ms. Lawrence has not pled as much.[42]

---

[36] *Martinez v. N.Y. State Div. of Human Rights*, No. 1:13-cv-1252 (GHW), 2015 WL 437399, at *5 (S.D.N.Y. Feb. 2, 2015) (citing 29 U.S.C. § 705(20)(B)).

[37] Amended Complaint, Docket No. 19, at p. 10; *see also Pineda v. ESPN, Inc.*, No. 3:18-cv-325 (MPS), 2018 WL 5268123, at *3-4 (D. Conn. Oct. 23, 2018) (dismissing Rehabilitation Act claim because, although the plaintiff alleged that she had PTSD, she failed to "allege anywhere in her complaint . . . that her PTSD 'substantially limits' her in any major life activity such as 'working'").

[38] 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(3)(A).

[39] Amended Complaint, Docket No. 19, at p. 10.

[40] 29 U.S.C. §705(20)(B); 42 U.S.C. § 12102(3)(B).

[41] Amended Complaint, Docket No. 19; *see also Kelly v. N.Y. State Office of Mental Health,* 200 F. Supp. 3d 378, 395 (E.D.N.Y. 2016) (dismissing claim under the "regarded as" prong because, although that prong does not require substantial limitation of a major life activity, it does not apply to impairments "with an actual or expected duration of [six] months or less") (quoting 42 U.S.C. § 12102(3)(B)).

[42] *See generally* Amended Complaint, Docket No. 19; *see also Mascetti v. Zozulin*, No. 3:09-cv-963 (PCD), 2010 WL 1644572, at *3 (D. Conn. Apr. 20, 2010) (dismissing Rehabilitation Claim in part because "[p]laintiff has not alleged that the perceived benefit denied her by [d]efendants was part of a program or activity receiving federal financial assistance").

Ms. Lawrence does say that she receives Social Security disability benefits. (*See* Amended Complaint, Docket No. 19, at 4.) Perhaps this was an attempt to claim that, in serving a patient

Other defects are unfixable, however. To begin with, a Rehabilitation Act claim "cannot be asserted against private individuals in their individual capacities," and therefore, there can be no such claim against Dr. Noonan in this case.[43] Second and even more significantly, a Rehabilitation Act claim is no less subject to the *McGugan/Costin* principle than an ADA claim.[44] Under that principle, a claim arising in the hospital context can proceed only if the plaintiff plausibly alleges that the defendant made "treatment decisions based on factors that are unrelated to and thus improper to consideration of" the relevant medical issue.[45] In this case, Ms. Lawrence has not done so.

I explained the *McGugan/Costin* principle in my prior recommended ruling,[46] but I will explain it again at greater length here for Ms. Lawrence's benefit. In a 2014 case called *McGugan v. Aldana-Bernier,* the United States Court of Appeals for the Second Circuit noted that "[t]he term 'discrimination' is potentially confusing in the context of medical treatment."[47] In other words, the term "discriminate" has two meanings, one good and one bad, and plaintiffs sometimes get confused about which one is unlawful. On the one hand, "discriminate" has a good meaning, that

---

who derived her income from a federal benefit program, the two hospital defendants received federal financial assistance. But indirectly benefiting from another person's benefits is not "federal financial assistance" in the contemplation of the law. *Cf. United States Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 607 (1986) (stating that the Rehabilitation Act "covers those who receive the aid, but does not extend as far as those who benefit from it").

[43]   *Mascetti v. Zozulin*, No. 3:09-cv-963 (PCD), 2010 WL 1644572, at *3 (D. Conn. Apr. 20, 2010) (citing *M.K. ex rel. Mrs. K. v. Sergi*, 554 F. Supp. 2d 201, 230 (D. Conn. 2008) and *Garcia v. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001)).

[44]   *Bryant v. Steele*, 25 F. Supp. 3d 233, 242 (E.D.N.Y. 2014) ("As a general matter, neither the ADA nor the Rehabilitation Act applies to claims regarding the quality of mental health services, nor do the statutes create a remedy for medical malpractice.") (citation and quotation marks omitted).

[45]   *McGugan v. Aldana-Bernier*, 752 F.3d 224, 234 (2d Cir. 2014).

[46]   Recommended Ruling, Docket No. 18, at pp. 13-14.

[47]   *McGugan v. Aldana-Bernier*, 752 F.3d 224, 231 (2d Cir. 2014).

is, "to make a distinction . . . among the methods that should be used," or "to use good judgment."[48] On the other hand, "discriminate" of course also has a bad meaning, "to make a difference in treatment or favor on a basis other than individual merit."[49] In the medical context, "[a] doctor who administers a medical treatment to a patient (or withholds it) because the doctor's medical training leads her to conclude that the treatment is medically appropriate (or inappropriate) is practicing the" good form of discrimination.[50] Conversely, "a doctor who inflicts or withholds a type of medical treatment for reasons having no relevance to medical appropriateness—reasons dictated by bias rather than medical knowledge—is practicing" the bad form.[51]

Because the word "discriminate" has both a good and a bad meaning, a plaintiff does not plead a plausible Rehabilitation Act claim in the medical context merely by alleging that her doctor "discriminated." "It is clear that the intention of the Rehabilitation Act in prohibiting discrimination is to prohibit" the bad form, not the good form.[52] Thus, a plaintiff's complaint must allege enough facts that, if she were to prove them at a later stage of the case, would show that the doctor treated or failed to treat her "on the basis of considerations that were unrelated to or improper to consideration of" her medical issues.[53]

In the case of *Costin v. Glens Falls Hospital*, for example, a maternity patient alleged that a hospital denied her an epidural injection and accelerated her labor as an act of discrimination against illegal drug users like herself.[54] The Court of Appeals upheld the dismissal of her Rehabilitation Act claim, because the hospital's maternity ward decision "clearly constitute[d]

---

| | |
|---|---|
| 48 | Webster's Ninth New Collegiate Dictionary (1985), at p. 362. |
| 49 | Webster's Ninth New Collegiate Dictionary (1985), at p. 362. |
| 50 | *McGugan v. Aldana-Bernier*, 752 F.3d 224, 231 (2d Cir. 2014). |
| 51 | *McGugan v. Aldana-Bernier*, 752 F.3d 224, 231 (2d Cir. 2014). |
| 52 | *McGugan v. Aldana-Bernier*, 752 F.3d 224, 231 (2d Cir. 2014). |
| 53 | *McGugan v. Aldana-Bernier*, 752 F.3d 224, 234 (2d Cir. 2014) (quotation marks omitted). |
| 54 | *Costin v. Glens Falls Hosp.*, 103 F.4th 946, 954 (2d Cir. 2024). |

medical decisions" rather than the bad form of discrimination.[55] Similarly, the plaintiff in *Smith v. City of New York* alleged that a psychiatric hospital discriminated against her by making her take her clothes off during a physical exam that was part of her treatment for a mental health crisis.[56] The court dismissed her Rehabilitation Act claim, in part because her complaint made clear that "the disrobement policy is based on a judgment about the appropriate medical response to an apparent psychiatric emergency," not "on account of improper considerations relating to her disability."[57]

The same is true in this case. Even if one assumes the truth of every non-conclusory factual allegation in Ms. Lawrence's amended complaint, she still would not have shown that Dr. Noonan applied the bad form of discrimination, because the decision whether to consider psychological explanations for her complaints "clearly constitute medical decisions."[58] The only allegations of bad discrimination in the amended complaint are conclusory allegations that cannot save the Rehabilitation Act claim from dismissal.[59] To be sure, Dr. Noonan might or might not have made the right medical decision, but that might be for a state court to consider as a medical malpractice claim. It is not a basis for a Rehabilitation Act claim.[60]

---

[55] *Costin v. Glens Falls Hosp.*, 103 F.4th 946, 954 (2d Cir. 2024).
[56] *Smith v. City of New York*, No. 15-cv-4493 (RJS), 2016 WL 4574924, at *1 (S.D.N.Y. Sept. 1, 2016).
[57] *Smith v. City of New York*, No. 15-cv-4493 (RJS), 2016 WL 4574924, at *8 (S.D.N.Y. Sept. 1, 2016).
[58] *Costin v. Glens Falls Hosp.*, 103 F.4th 946, 954 (2d Cir. 2024).
[59] Amended Complaint, Docket No. 19, at p. 6 ("The defendant discriminated against me by denying medically necessary services which resulted in injury and harm."). The Court previously explained to Ms. Lawrence that a "conclusory" allegation is one that "expresses a factual inference without stating the underlying facts on which the inference is based." Recommended Ruling, Docket No. 18, at p. 14 n.74 (quoting Black's Law Dictionary (8th ed. 2004) at p. 308).
[60] *McGugan v. Aldana-Bernier*, 752 F.3d 224, 234 (2d Cir. 2014) (rejecting an argument that would "give plaintiffs an almost unfettered ability to re-frame claims of medical malpractice into federal claims of discrimination on the basis of disability").

B.     The Revised ADA Claim

As with the Rehabilitation Act claim, I begin my analysis of Ms. Lawrence's revised ADA claim by considering whether the Court has jurisdiction over it. In my first Recommended Ruling, I explained that under Title III of the ADA, "[a] private individual may only obtain injunctive relief," not money damages.[61] I added that "[t]his principle affects the questions of jurisdiction and standing," because "[a] plaintiff who is pursuing an injunction under Title III . . . must establish that she is likely to be harmed again in the future in a similar way."[62] In an evident response to these points, Ms. Lawrence's amended complaint adds some allegations about the likelihood of her returning to Charlotte Hungerford Hospital. Specifically, she says that she returned to the hospital's emergency room on February 26, 2024 when her son cut himself and needed stitches, and she says that she was "terrified of being discriminated against."[63] She also says that she is "at risk for cauda equina syndrome and was instructed by [her] physical therapist that once symptoms occur to report to the nearest emergency room"—that is, Charlotte Hungerford.[64]

Even with these additional allegations, Ms. Lawrence has not established standing. A complaint demonstrates standing to pursue an injunction when "(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' businesses to plaintiff's home, that plaintiff intended to return to the subject

---

[61] Recommended Ruling, Docket No. 18, at p. 8 (quoting *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 86 (2d Cir. 2004).
[62] Recommended Ruling, Docket No. 18, at pp. 8-9 (quoting *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68. 74 (2d Cir. 2022)) (quotation marks omitted).
[63] Amended Complaint, Docket No. 19, at p. 12.
[64] Amended Complaint, Docket No. 19, at p. 13.

location."[65]  Here, Ms. Lawrence has alleged no facts that would support the second prong.  Even if the Court were to accept her claim that Dr. Noonan does not like patients with mental health conditions, it is personal to Dr. Noonan, because Ms. Lawrence makes no non-conclusory allegation that the doctor's "discrimination" was the product of any hospital policy.  Thus, any "infer[ence] that the discriminatory treatment would continue" would hinge not only on Ms. Lawrence returning to Charlotte Hungerford, but also on her drawing Dr. Noonan as her doctor, and the amended complaint provides no reason to suppose that this is likely.  Indeed, while Ms. Lawrence says that she was "terrified of being discriminated against" when she returned to the hospital with her son in February of 2024, she tellingly does not say that she *was* discriminated against.[66]  The fact that she was evidently treated fairly by a different doctor undercuts any claim that it would be "reasonable to infer that the discriminatory treatment would continue."  And with respect to the third prong of the test for standing, simply being "at risk" for a medical condition that might lead to an emergency room visit is insufficient.[67]

Ms. Lawrence's amended complaint adds allegations about another interaction with medical providers, but this interaction does not change the analysis.  She describes an October 10, 2023 visit with Dr. Rachel Kurecka, a Hartford Hospital neurologist, and Ms. Lawrence alleges that Dr. Kurecka "denied [her] any further workup and stated she believe[s her] symptoms are functional in nature."[68]  She also complains that Dr. Kurecka "denied [her] a wheelchair."[69]  But

---

[65] *Costin v. Glens Falls Hosp.*, 103 F.4th 946, 952 (2d Cir. 2024) (quoting *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022)) (brackets omitted).
[66] Amended Complaint, Docket No. 19, at pp. 12-13.
[67] *See Schroedel v. New York Univ. Med. Ctr.*, 885 F. Supp. 594, 596 (S.D.N.Y. 1995) (holding that "mere speculation" that the plaintiff would "experience a medical condition in the future that [w]ould require emergency room assistance" was insufficient to establish standing).
[68] Amended Complaint, Docket No. 19, at p. 11 & Exhibit 10.
[69] Amended Complaint, Docket No. 19, at p. 11.

she provides no reason to suppose that any of this will ever happen again.[70] In short, Ms. Lawrence still lacks standing to bring an ADA Title III claim, and because she does, the Court lacks jurisdiction over it.[71]

## III. CONCLUSION

In closing, I recommend that Judge Nagala dismiss all of Ms. Lawrence's claims. I will also pause to note that if this Recommended Ruling were to be adopted, and the Amended Complaint were to be dismissed, that dismissal would not stop Ms. Lawrence from asserting a valid medical malpractice claim if she has one. Such a claim would have to be brought in state court, however, because this court would not have jurisdiction over it.[72]

This is a recommended ruling by a Magistrate Judge.[73] **If Ms. Lawrence wishes to object to my recommendation, she must file that objection with the Clerk of the Court by February 2, 2026.**[74] If she fails to file a timely objection, her failure "operates as a waiver of any further

---

[70] She also provides no reason to suppose that Dr. Kurecka engaged in the bad form of discrimination under the *McGugan/Costin* principle. Thus, even if she had standing to assert a claim against Hartford Hospital arising out of her interaction with Dr. Kurecka, she would not have asserted a plausible one.

[71] *Otrompke v. First Dep't Comm. On Character & Fitness*, No. 20-4107, 2021 WL 5764221, at *1 (2d Cir. Dec. 6, 2021) (summary order) ("A district court lacks jurisdiction when . . . the plaintiff lacks constitutional standing to bring the action.") (quotation marks omitted).

[72] As the Court previously explained to Ms. Lawrence, the state Superior Court is a court of general jurisdiction, "meaning that it can decide a very wide array of cases." Recommended Ruling, Docket No. 18, at p. 3. This court, by contrast, is a court of "limited jurisdiction" that principally hears civil cases between citizens of different states or cases that present a "federal question." Recommended Ruling, Docket No. 18, at p. 4. A medical malpractice claim between Ms. Lawrence on the one hand, and Dr. Noonan and the hospitals on the other hand, would not be a dispute between citizens of different states. And a "medical malpractice claim does not support federal question jurisdiction[,]" because medical malpractice is a matter of state law. *Johnson v. Hilton*, No. 3:22-cv-110 (SALM), 2022 WL 486972, at *2 (D. Conn. Feb. 17, 2022.

[73] Fed. R. Civ. P. 72(b)(1); D. Conn. L. Civ. R. 72.1(C).

[74] *See* Fed. R. Civ. P. 72(b)(2) (stating that objections to magistrate judge recommendations shall be filed within fourteen days); D. Conn. L. Civ. R. 72.2(a) (allowing five additional days for persons who, like Ms. Lawrence, will receive the recommendation from the Clerk of the Court via

judicial review[.]"[75] In particular, failure to file a timely objection operates as a waiver of the right to seek appellate review in the Court of Appeals.[76]

/s/ Thomas O. Farrish
Hon. Thomas O. Farrish
United States Magistrate Judge

---

mail); Fed. R. Civ. P. 6(a)(1)(C) (stating that where, as here, the due date would otherwise fall on a Sunday, "the period continues to run until the end of the next day that is not a . . . Sunday").
[75]    *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).
[76]    *Small,* 892 F.2d at 16; *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6; *see also Impala v. U.S. Dep't of Justice*, 670 F. App'x 32 (2d Cir. 2016) (summary order).